30 F.3d 140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Monroe Dale SANDERS, Defendant-Appellant.
 No. 93-10226.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 16, 1994.
Decided July 28, 1994.
As Amended Oct. 26, 1994.
 
 Before: POOLE, CANBY AND RYMER, CIRCUIT JUDGES.
 
 
 1
 MEMORANDUM*
 
 
 2
 Monroe Dale Sanders appeals his jury conviction for one count of abusive sexual contact in violation of 18 U.S.C. Secs. 2244(a)(1) and 1152. We affirm.
 
 I.
 
 3
 Sanders argues that the district court erred in admitting evidence of prior acts under Rule 404(b) of the Federal Rules of Evidence. Although we agree that some of the evidence was improperly admitted under the rule, we conclude that the error was harmless.
 
 
 4
 The Rule 404(b) evidence that Sanders challenges took several forms. The alleged victims of the charged crimes and other Dilcon students testified to uncharged incidents of touching by the defendant. Also, two of Sanders' former foster children testified about incidents that allegedly occurred during their brief stays at Sanders' home.
 
 
 5
 In regard to the testimony of the Dilcon students, we conclude that their testimony about alleged uncharged touching incidents does not fall within the scope of Rule 404(b) because those were inextricably intertwined with the charged conduct. They accordingly were admissible. See United States v. Soliman, 813 F.2d 277, 279 (9th Cir.1987). In contrast, the testimony of Sanders' former foster children, Phillipe Cote and Ellery Green, clearly falls within the scope of the rule; these incidents were not part of a single criminal episode.
 
 
 6
 Cote lived with Sanders for a few months five years prior to his testimony at trial and four years prior to the charged offenses. He testified that during his stay with Sanders, Sanders persuaded him on one occasion to sleep with Sanders in Sanders' bed. According to Cote, he awoke during the night to find Sanders masturbating himself with Cote's hand.
 
 
 7
 Ellery Green testified that on one occasion when he was staying at Sanders' home Sanders entered the shower, already occupied by Green, with an erection. He also testified that on at least one occasion, although he had gone to sleep in his own bed, he awoke in Sanders' bed. Finally, he testified that Sanders gave him pornographic magazines to read and that once he turned on Sanders' VCR to discover that it contained a pornographic video.
 
 
 8
 We will not conclude that the district court abused its discretion in admitting 404(b) evidence so long as: (1) sufficient proof exists for the jury to find that the defendant committed the prior act; (2) the prior act was not too remote in time; (3) the prior act is introduced to prove a material issue in the case; and (4) if used to prove intent, the prior act is similar to the offense charged. United States v. Hadley, 918 F.2d 848, 850-51 (9th Cir.1990).
 
 
 9
 The first three elements of our test clearly are met with respect to Cote's testimony. See id. at 850-52 (evidence of prior sexual abuse of a minor allegedly occurring 10 years before the charged offense was relevant to the defendant's intent at the time of the charged offense; sufficient evidence existed for jury to find that the prior act occurred because witnesses testified in detail). Sanders does not contend otherwise, but argues that the incident to which Cote testified was not sufficiently similar to the charged conduct to be probative of his intent. We conclude that it was and that the district court therefore did not abuse its discretion in admitting the evidence under Rule 404(b).
 
 
 10
 Sanders misconstrues the similarity requirement of our test when he argues that we should focus only on whether the prior conduct is exactly the same as that charged; the proper focus is whether the conduct is sufficiently probative of his intent when he engaged in the charged conduct. Rule 404(b) is a rule of inclusion. Id. at 850. The question of similarity may be decided on a higher level of generality than Sanders urges.[1] There was sufficient similarity in the sexual conduct toward minors to render the prior acts probative of Sanders' intent with regard to the charged acts. See Hadley, 918 F.2d at 851 (isolating students and performing "acts of sexual gratification upon them, often including anal intercourse" sufficiently similar to charged acts of anal intercourse and other acts of sexual abuse).
 
 
 11
 Our recent decision in Henry v. Estelle, 993 F.2d 1423 (9th Cir.1993), does not aid Sanders. In Henry, we held it was reversible error in a child molestation case to admit testimony that, many years earlier, the defendant had been accused by a parent of having molested his son, and had denied it. But, as we pointed out in Henry, there had been no evidence that the defendant had in fact committed the prior bad act, and the evidence was not probative of any material issue in the case. Id. at 1427. Here, in contrast, there was direct testimony that Sanders had committed the prior acts, and the acts were relevant to the disputed element of intent.
 
 
 12
 We also conclude that Cote's testimony passes muster under Rule 403; the probative value of the evidence in determining Sanders intent when he touched the students at Dilcon was high, particularly in light of the fact that at least some of the touching was arguably equivocal as to the purpose of sexual gratification. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Moreover, the court properly instructed the jury on the limited use of the prior acts, and informed the jury that it had to find beyond a reasonable doubt that Sanders had committed the acts before it could consider them on the issue of intent. In that regard, Sanders' case is to be compared with Hadley, 918 F.2d at 852, and contrasted with Henry, 993 F.2d at 1428, where the court's instructions virtually required them to consider the prior acts. Admission of the Cote testimony therefore complied with the requirements of both Rule 404(b) and Rule 403.
 
 
 13
 We reach a contrary conclusion with respect to the incidents to which Green testified; the district court abused its discretion in admitting this evidence under Rule 404(b). Green's testimony that on occasion he awoke in Sanders' bed does not even appear relevant to intent because nothing related by Green indicates that anything improper occurred on those occasions. The incidents regarding the pornographic magazines and video, although possibly relevant to Sanders' intent, are not sufficiently similar to pass muster under the rule. The shower incident presents a closer question. We need not determine whether this incident is sufficiently similar to have been properly admitted under rule 404(b), however, because we conclude that even if all of Green's testimony was improperly admitted, the error was harmless.
 
 
 14
 An error that is not of constitutional dimension is harmless when it can be said with fair assurance that the verdict would have been the same without the error. United States v. Brooke, 4 F.3d 1480, 1488 (9th Cir.1993). The presentation of the government case spanned four full trial days. Green was one of nineteen government witnesses. In his closing argument, the prosecutor did not emphasize Green's testimony disproportionately to the testimony of the other government witnesses. The defense counsel emphatically called into doubt the probative value and credibility of Green's testimony in his closing argument. We also note that Green's testimony, insofar as it bore on Sanders' intent, was not crucial to the touching incident of which he was convicted; Albert Spencer, the alleged victim of Count II, testified that Sanders "rubbed" his "butt" for 30 seconds and said "Don't tell anybody." The testimony about the form of the touching, "rubbing," and Sanders' statement also bore on the question of Sanders' intent. In light of all of this evidence, we conclude that any error in the admission of Green's testimony was harmless.
 
 II.
 
 15
 Sanders next contends that the district court improperly restricted his cross-examination of government witnesses at trial. He asserts that these restrictions were contrary to Federal Rule of Evidence 608(b) and violated his constitutional right to confront the witnesses against him.
 
 
 16
 So long as the jury receives sufficient information to appraise the biases and motivations of the witnesses, a district court's limitation on cross-examination will not be found to be an abuse of discretion or a violation of the defendant's confrontation clause rights. See United States v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991). Having reviewed the transcript of the cross-examinations of Randall Nezzie, the Spencer children, Phillipe Cote, Leroy Black and Sandra Hopper, we are satisfied that Sanders was accorded ample opportunity to impeach the government witnesses. There was no error.
 
 III.
 
 17
 Sanders next argues that there was insufficient evidence to support the jury's verdict of guilty beyond a reasonable doubt on Count II. In Count II of the indictment, it was alleged that Sanders had touched Albert Spencer on the buttocks while Albert was in bed covered by a blanket. Sanders contends that this conduct cannot constitute the crime of abusive sexual contact because the statute only prohibits touching of a child's buttocks "either directly or through clothing." 18 U.S.C. Sec. 2245(3) (defining "sexual contact"). We disagree.
 
 
 18
 The word "clothing" does not refer solely to items of apparel. See Webster's Third New International Dictionary (1976) (defining "clothing" as "covering for the human body or garments in general: all the garments and accessories worn by a person at any time") (emphasis added). The conduct for which Sanders was convicted falls within the scope of the Act's prohibition against touching specified body parts "either directly or through the clothing."
 
 
 19
 We also reject Sanders' more general assertion that the evidence did not support the verdict. Albert Spencer testified that the conduct occurred. He also testified that Sanders then admonished him "Don't tell anybody." That statement is relevant to whether Sanders had the intent necessary for the touching to be violative of the statute. The admissible 404(b) evidence that we have already discussed also bore on Sanders' intent. Viewing this evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 IV.
 
 20
 Sanders next contends that the district court abused its discretion by excusing a juror after deliberations had begun. We disagree.
 
 
 21
 Federal Rule of Criminal Procedure 23(b) provides:
 
 
 22
 [I]f the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining eleven jurors.
 
 
 23
 In this case, one of the female jurors requested that she be excused from further service because she was one month pregnant and had awakened that morning to discover blood on her sheets. She informed the court that she was concerned that the stress associated with continuing in the deliberations would cause her to miscarry. She already had suffered one miscarriage in an earlier pregnancy. She told the district judge that her concerns about her condition prevented her from concentrating on the jury deliberations. The judge excused her.
 
 
 24
 The reasons for excusing this juror constitute just cause within the meaning of the rule. Cf. United States v. Tabacca, 924 F.2d 906 (9th Cir.1991) (no just cause where juror was excused because his wife had his car keys). The district court did not abuse its discretion when it excused this juror from further service.
 
 V.
 
 25
 Sanders' final contention is that he was denied a fair trial because of prosecutorial misconduct. He directs our attention to six separate instances of alleged misconduct. We have carefully reviewed the relevant portions of the transcript with respect to each alleged instance of misconduct. We are convinced that, although some of the prosecutor's conduct was improper, the misconduct did not materially affect the fairness of Sanders' trial. Accordingly, reversal is not warranted. See United States v. Polizzi, 801 F.2d 1543, 1558 (9th Cir.1986).
 
 CONCLUSION
 
 26
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 This is not a case where a prior bad act of a defendant is used to establish his identity as the perpetrator of the crime for which he is being charged. Where identity is in issue, we require the prior act to be distinctively similar to the charged act. United States v. Powell, 587 F.2d 443, 448 (9th Cir.1978); see E. Cleary, McCormick on Evidence Sec. 190 at 449 (rev. ed. 1972)